## UNITED STATES *v.* THE " GRACE LOTHROP."

The agreement, in writing or in print, which, with certain exceptions, the master of a vessel, bound from a port in the United States to any foreign port, is required, before proceeding on his voyage, to make with every seaman whom he carries to sea as one of his crew, need not be signed in the presence of a shipping commissioner, when such voyage is to a port in the West India Islands.

APPEAL from the Circuit Court of the United States for the District of Massachusetts.

This is an information against the brig " Grace Lothrop " for a violation of the act of June 7, 1872, 17 Stat. (262), as amended by the act of Jan. 15, 1873, id. 410.

The grounds of the information are, that on the 18th of December, 1873, at Boston, one Atwood, while master of that vessel, did knowingly receive and accept, to be entered on

board, five seamen who had been theretofore engaged for a voyage from Boston to a port in the West Indies, by agreements in writing that had not been signed in the presence of a shipping commissioner, &c.

The answer of Atwood, the claimant, admits the facts as alleged, but denies that engagements for voyages to the West Indies are within the statutes referred to.

The court having dismissed the information, the United States appealed here.

*The Solicitor-General* for the appellant.
*Mr. Seth J. Thomas, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Persons other than a shipping commissioner are in certain cases forbidden to perform or attempt to perform the duties usually required of such an officer, as prescribed by the acts of Congress.

Atwood, the respondent, as the information charges, was the master of the brig "Grace Lothrop;" that he, on the 18th of December, 1873, as such master, did knowingly receive and accept to be shipped on board of the brig five seamen engaged and supplied for the purpose contrary to the act authorizing the appointment of shipping commissioners to superintend the shipping and discharge of seamen, and that the seamen were so engaged and accepted by an agreement in writing not signed by them in the presence of a shipping commissioner.

Due monition was issued and served by seizing the vessel, and the master appeared and filed an answer. Among other things, he admitted that the brig when arrested was bound on a voyage to a port in the West Indies, that he shipped the five seamen for that voyage, and that the shipping agreement was not signed by the seamen in the presence of such a commissioner; but he denies that he has incurred any penalty by shipping the seamen named in the libel without the presence of such an officer. Hearing was had in the Circuit Court where the libel was filed, and the decree of the Circuit Court was in favor of the respondent, dismissing the libel, and from that decree the United States appealed to this court.

Errors assigned are as follows: 1. That the court erred in

holding that the act of Congress providing for the appointment of such commissioners does not require that the agreement to be signed by seamen in voyages between the ports of the United States and the West Indies shall be signed in the presence of a shipping commissioner.   2. That the court erred in holding that the information is defective in not negativing the suggestion that the master of the brig himself acted as shipping commissioner.   3. That the court erred in dismissing information.

Before proceeding to examine the errors assigned, it should be observed that the appellants contend that the wrongful act charged, if punishable at all, is punishable under the Revised Statutes, which, as they insist, went into operation eighteen days before the alleged wrongful act was perpetrated.   Rev. Stat., sect. 5601.

Masters of every vessel bound from a port in the United States to any foreign port, other than such as are therein excepted, are required by those statutes, before they proceed on such a voyage, to make an agreement in writing or in print with every seaman whom they carry to sea as one of the crew, in the manner the act prescribes, which shall be as near as practicable in the form therein directed, to be dated at the time of the first signature, and to be signed by the master before any seaman signs the instrument.

Vessels excepted from those requirements are all such as are engaged in trade between the United States and the British North American possessions or the West India Islands or the Republic of Mexico ; nor do those requirements apply to masters of vessels where the seamen are by custom or agreement entitled to participate in the profits or result of a cruise or voyage, nor to masters of coastwise or of lake-going vessels that touch at foreign ports, but they do apply without qualification to vessels of seventy-five tons burden or upward bound from a port on the Atlantic to a port on the Pacific, or *vice versa ;* the vessels bound on such voyages being subject in that regard to the same rules as those bound on a voyage from a domestic port to a foreign port.   Rev. Stat., sect. 4511.

Detailed specification of the stipulations and regulations which such an agreement shall contain are also set forth in the

same section : and the succeeding section provides to the effect that every such agreement, except where it is otherwise provided, shall be signed by each seaman in the presence of a shipping commissioner; that when the crew is first engaged the agreement shall be signed in duplicate, and that one part shall be retained by the commissioner, and that the other part shall contain a special place or form for the description and signatures of persons engaged subsequently to the departure of the ship, and that it shall be delivered to the master; and that every such agreement so made shall be acknowledged, and certified under the hand and seal of the commissioner, and that the certificate shall be appended to the agreement in the form therein prescribed.

Argument to show that vessels engaged in trade between the United States and the West India Islands are not subject, to the regulations enacted with respect to vessels employed in foreign commerce not falling within the exceptions contained in the section, is quite unnecessary, as it is as clear as language can make it that vessels engaged in trade between the United States and the British North American possessions and the West India Islands and the Republic of Mexico are excepted from the operation of the clause made applicable to vessels bound from a port of the United States to any foreign port, by the words " other than ; " which clearly and to a demonstration exclude the voyages subsequently described from the category of those previously mentioned in the preceding part of the section.

Concede that the Revised Statutes do support that theory, still it may be suggested that, inasmuch as the case was adjudged in the court below as if it was controlled by the previous acts of Congress, it ought to be determined here in view of the same statutory provisions. Suppose that it is so, still it is certain that it will not benefit the libellants, as it is obvious that the antecedent legislation of Congress, when properly understood, must lead to the same conclusion.

Power to appoint shipping commissioners was conferred by the act of the 7th of June, 1872; and the act provides that the general business of such a commissioner shall be as follows: 1. To afford facilities for engaging seamen, by keeping a reg-

ister of their names and characters.   2. To superintend their
engagement and discharge in the manner prescribed.   3. To
provide means for securing the presence of the men so engaged
on board at the proper times.   4. To facilitate the making
apprenticeships to the sea service, and to perform such other
duties relating to merchant seamen and ships as the powers
conferred by the act require.   17 Stat. 262.

Where no such appointment has been made, the whole or
any part of such business may be conducted by the collector
or deputy-collector of such place or port.

Appended to that section is a proviso that nothing in the
act shall be so construed as to prevent the owner or consignee
or master of any vessel, except such as are described in sect.
12 of the act, from performing himself, so far as the ship
is concerned, the duties of shipping commissioner under the
act.   Id. 263.

Sect. 12 of the same act provides that the master of every
ship bound from a port in the United States to any for-
eign port, or of any ship of the burden of seventy-five tons or
upward bound from a port on the Atlantic to a port on the
Pacific, or *vice versa*, shall, before he proceeds on such voyage,
make an agreement in writing or in print with every seaman
whom he carries to sea as one of the crew, in the manner par-
ticularly set forth in the act, which shall be dated at the time
of the first signature thereof, and shall be signed by the master
before any seaman signs the same.

Agreements of the kind, subject to certain exceptions not
necessary to be noticed, must be signed by each seaman in the
presence of a shipping commissioner; and, when the crew is
first engaged, the agreement must be signed in duplicate, one
part being retained by the commissioner, and the other part to
contain a place or form for the description and signature of
persons engaged subsequently to the departure of the ship.

Annexed to sect. 12 is a proviso equivalent to what is en-
acted in the Revised Statutes, that the section shall not
apply to masters of vessels when the seamen are, by custom or
agreement, entitled to participate in the profits or results of a
cruise or voyage, nor to masters of coastwise vessels or of lake-
going vessels that touch at foreign ports.

Congress, on the 15th of January, 1873, added another proviso to sect. 12 of the original act, to the effect that the section shall not apply to masters of vessels when engaged in trade between the United States and the British North American possessions or the West India Islands or the Republic of Mexico. Id. 410.

Explicit as that provision is, it may well be contended that it applies only to the twelfth section of the original act; but Congress, in the month of June, 1874, passed another amendatory act, by which it is provided that none of the provisions of the original act shall apply to sail or steam vessels engaged in the coastwise trade, except the coastwise trade between the Atlantic and Pacific coasts, or in the lake-going trade touching at foreign ports or otherwise, or in the trade between the United States and the British North American possessions, or in any case where the seamen are by custom or agreement entitled to participate in the profits or result of a cruise or voyage. 18 id. 64.

Though the act last referred to is subsequent in date to the supposed wrongful acts of the respondent, as alleged in the libel, yet the language of the act is in terms an explicit declaration that Congress never intended that the original act should apply to vessels engaged in any part of the coasting trade, except that between the Atlantic and Pacific coasts. Nor is it necessary to refer to that act to support the decree below in this case, as the prior act expressly provides that sect. 12 of the original act shall not apply to masters of vessels when engaged in trade between the United States and the British North American possessions or the West India Islands or the Republic of Mexico, which affords a demonstration that the decree below, whether tested by the provisions of the Revised Statutes or by the previous legislation of Congress, is correct.

Masters of vessels bound from the port of a State to a port in any other than an adjoining State were required by an early act of Congress, before the vessel proceeded on her voyage, to make an agreement in writing or print with every seaman of the crew, declaring the voyage and the term of time for which such seaman was shipped. 1 id. 131. Attempt is now made to support the theory of the libel, by invoking the provisions

of that act, and blending the same with the provisions of the act creating the shipping commissioners; but the attempt cannot be successful in the case before the court, as the amendment to the last-mentioned act provides that the twelfth section of the prior act shall not apply to the masters of vessels when engaged in trade between the United States and the West India Islands.

Beyond all doubt, that amendment and the twelfth section of the original act must be read together in disposing of the present case, as the amended act was passed before the supposed wrongful act of the respondent was committed. When those two provisions are read together, it is an easy matter to specify the cases in which shipping commissioners must act, or in which the agreement of the seaman is required to be signed in the presence of such a commissioner. They are as follows: 1. Where the ship is bound from a port in the United States to a foreign port, not including the ports of the British provinces or the ports of the West India Islands or the Republic of Mexico, or lake-going vessels touching at foreign ports. 2 Ships of seventy-five tons burden or upward bound from a port on the Atlantic to a port on the Pacific, or *vice versa.*

Provision was made by the second proviso in sect. 12 of the original act that that section should not apply to masters of vessels where the seamen are by custom or agreement entitled to participate in the profits or result of a cruise or voyage, nor to masters of coastwise voyages or masters of lake-going vessels which, as before explained, touch at foreign ports. Three other exceptions to the operation of the twelfth section of the original act were added to the preceding list by the amendatory act, which provides that the twelfth section of the act shall not apply to masters of vessels when engaged in trade between the United States and the British North American possessions or the West India Islands or the Republic of Mexico.

Duties are assigned to shipping commissioners which all other persons are forbidden to perform, under the penalty therein prescribed; but the same section provides that nothing in the act shall be so construed as to prevent the owner or consignee or master of any ship, except such as are described in

sect. 12 of the act, from performing himself, so far as the ship is concerned, the duties of shipping commissioner under the act.

Tested by these considerations, it follows that the provision requiring the agreements of seamen to be signed in the presence of a shipping commissioner refers only to the agreements described in sect. 12 of the original act; nor does it include those which are excepted from the operation of sect. 12 by the second proviso to the same section, nor either of the three cases excepted out of the operation of the same section by the amendatory act subsequently adopted.

Penalties are imposed for shipping seamen contrary to the regulations which the original act prescribes; but it is clear that the clause imposing the penalty does not refer to seamen who have agreed to make a voyage other than one of the two classes within the operation of sect. 12, as modified by the amendatory act subsequently adopted. 17 id. 410.

Where the voyage to be made does not fall within the operation of sect. 12 as amended by the subsequent act, the owner or consignee or master of the ship may himself perform, so far as the ship is concerned, the duties of shipping commissioner which the act prescribes, as the same is expressly authorized by the proviso to the eighth section of the act.

Shipping articles, called agreements in the original act under consideration, are to be made in writing or in print with every seaman shipped for the voyage before the ship proceeds from the port of shipment; and if the voyage is a foreign one in the sense already explained, or one from a port of the Atlantic to a port of the Pacific, or from a port of the Pacific to a port of the Atlantic, in a vessel of the burden of seventy-five tons or upward, the agreement must be signed in presence of a shipping commissioner, unless it appears that the shipment was made in a port or place in which no shipping commissioner has been appointed, in which event the whole or any part of the business of such a commissioner may be conducted by the collector of the customs or his deputy at the port or place of shipment.

Such agreements with each and every seaman must be made before the ship or vessel proceeds for the port of destination

in all the other voyages mentioned in the act which are not
excepted out of the operation of the twelfth section.   Conclu-
sive support to that proposition is found in the first clause of
the fourteenth section of the original act, which provides that
if any person shall be carried to sea as one of the crew on
board of any ship making a voyage hereinbefore specified,
without entering into an agreement with the master of said
ship in the form and manner and at the place and times hereby
in such cases required, the ship shall be held liable, and shall
incur the penalty therein provided.   Where it is not required
that such agreements shall be signed in the presence of a ship-
ping commissioner, or that the business of such a commissioner
shall be conducted by the collector of the customs or his deputy,
the owner or consignee or master of the ship, so far as the
ship is concerned, may himself perform the duties of shipping
commissioner under the act, by virtue of the provisos contained
in the eighth and twelfth sections of the original act.

Ships may be liable to the penalty prescribed by the four-
teenth section of the act in case a seaman is carried to sea as
one of the crew on board, though making a voyage excepted
out of the operation of sect. 12, if it appears that the ship pro-
ceeded on such voyage before the master made the required
agreement with the seamen in writing or in print, provided
the charge in the information covers such a delinquency; but
the sole charge in the libel in this case is, that the agreement
was not signed by the seamen in the presence of a shipping
commissioner.   It contains no allegation that the agreement
was not in due form, nor that it was not signed in presence of
the owner or consignee, or of the master of the ship.

Enough has already been remarked to show that the voyage
was one excepted out of the operation of the twelfth section of
the act, and that it was one where the owner or consignee, or
the master of the ship himself, might lawfully perform the
duties of shipping commissioner.   Nothing being alleged to
the contrary, it must be presumed that the required agreement
was made in due form, and that it was properly signed by the
seamen in the presence of some one of the three persons
authorized by the act to perform that duty, before the ship
proceeded on the described voyage.

Examined in the light of these suggestions, it is clear that the decree dismissing the libel is correct. Different conclusions, we are aware, have been reached by other judges; but it must suffice to say, that we are not able to concur in the reasons given in support of those decisions.

.    *Decree affirmed.*