UNITED STATES *v.* THE THOMAS W. HAVEN.

*(Circuit Court, D. Massachusetts.  July 17, 1880.)*

1. CONTRACT IN WRITING—MASTER AND SEAMEN—REV. ST. TITLE 53.—
There is nothing in title 53 of the Revised Statutes which requires a contract to be made in writing or in print, between the master of a vessel and the seamen, before the latter are received on board.

2. COASTING VOYAGES—REV. ST. § 4515.—Section 4515 of the Revised Statutes, providing penalties for receiving on board of any merchant vessel any seaman who has been engaged or supplied contrary to the provisions of title 53, has no application to coasting voyages.

LOWELL, C. J.  This libel of information by the district attorney, in behalf of the United States, alleges that the schooner Thomas W. Haven is a vessel of 50 tons burden, and upwards, and was on the nineteenth day of November, 1879, bound on a voyage from Boston, in Massachusetts, to South Amboy, in New Jersey, and was and is owned by a citizen or citizens of the United States; that her master, Elisha S. Rachett, has subjected the schooner to the penalties provided

for by the Revised Statutes, title 53, § 4515, by receiving on board, on that day, three seamen named in the libel, who had been engaged and supplied as such seamen contrary to the provisions of that title, in this, that he "did not then and there, before proceeding on said voyage from Boston to South Amboy, make a contract in writing, or in print, with said seamen," etc. In another count it is alleged that on the second day of December, 1879, further penalties were incurred by the act of the master in receiving two seamen before proceeding on a similar voyage, then and there about to be undertaken, without having made the requisite written or printed agreement. The answer admits the material averments of fact, and denies the inferences of law.

The Revised Statutes have brought together in one title the several acts concerning merchant seamen, and section 4515 declares that if any master, mate, or other officer of a vessel, knowingly receives or accepts, to be entered on board of any merchant vessel, any seaman who has been engaged or supplied contrary to the provisions of that title, the vessel on board which any such seaman shall be found, shall, for every such seaman, be liable to a penalty of not more than $200.

The asserted illegality of the engagement of the five seamen, for which a penalty not exceeding $1,000 is here sued for, consists in a breach of the Revised Statutes, §§ 4520 and 4521, which require every master of a vessel above 50 tons burden, bound from a port of one state to a port in any other than an adjoining state, to make a contract in writing or in print with every seaman; and declare that if any master shall "carry out" any seaman, without such contract being first made, the seaman shall have the highest rate of wages and certain other rights, and the master shall be liable to a penalty of $20 for every such seaman, one-half for the United States, and one-half for the common informer. These sections represent what remained of the law of 1790, after the statute of 1872 was passed.

The most obvious remark upon the information is that it does not allege that the master "carried out" any seamen; there is no averment of any performed voyage, but only

of voyages to be performed. I infer from the dates, and from the fact that two separate offences are charged, that one of these short voyages had been performed, and that the other was about to begin; but the libel does not say so, excepting argumentatively, where it says that he neglected to do certain things before proceeding to sea. The omission is intentional, the government insisting that the offence is committed if a seaman is received before the contract is signed.

Upon a review of the opinion expressed in *The Grace Lothrop*, 1 Holmes, 342, I am unable to see anything to correct in what I then said, and I would refer to the report of that case for my views upon section 4515, then a part of statute 1872, § 14, (17 St. 265.) We have no law requiring the master to make his contract with the seamen before receiving them on board his vessel; in both sorts of voyage, foreign and domestic, the command is to make the contract before proceeding on the voyage. Rev. St. §§ 4511, 4520. The section upon which this information proceeds is copied literally, and somewhat thoughtlessly, from the English merchant shipping act, 17 and 18 Vict. *c.* 104, §§ 146 and 147. By that law, merchant seamen are to be "engaged and supplied" by licensed brokers, and a penalty is imposed upon any one, not such broker, who engages or supplies such seamen, and upon any one who knowingly receives on board a merchant vessel seamen so illegally engaged or supplied. Our law has no corresponding provision for licensing brokers or for supplying ships with seamen, and the only possible meaning of the English law is impossible with us. No doubt any hiring of a seaman may be called engaging him, and he is engaged when he is contracted with. The word has that meaning in some parts of our shipping acts, and in some parts of the merchant shipping act. It cannot have it in section 4515, because, as we have seen, the statutes provide that the written contract, or "engagement," in that broad sense, is to be made at any time before the vessel proceeds to sea; therefore, no oral engagement can be illegal until the last moment

has elapsed in which a written engagement must be made, which is the moment before the anchor is weighed. Up to that time there is a *locus penitentiæ*. Section 4515 does not define the illegality, and I have sought in vain through the title to find any. The decision in *The Grace Lothrop, ubi supra*, did not turn upon this point. The statute of 1872 (17 St. 262) made many changes in the law of merchant seamen. Speaking broadly, but with sufficient accuracy for my present purpose, it required shipments and discharges of seamen for long foreign voyages to be conducted under the supervision of shipping commissioners, who had great powers and duties in this regard. It also made important regulations for all merchant seamen, such as that long-delayed act of justice giving them wages *pro rata*, though the vessel were lost, and many others. As to the contracts in coasting and West Indian voyages, it left the act of 1790 to deal with them. Section 13 of the act of 1872 (17 St. 265) provided that all agreements should be signed before a shipping commissioner, and the United States contended that this provision was applicable to every sort of voyage, and sued for a penalty because the contract in that case for a voyage to the West Indies was not so signed. The argument in favor of that construction was that the clause then and now sued on, (now Rev. St. § 4515,) making it penal to receive on board any vessel a seaman who had been engaged contrary to the provisions of that statute, must have a meaning. Another clause punished the act of proceeding to sea without making the articles required by that statute in the case of foreign voyages, and this appeared to be substantially the same offence; but the argument of the United States was that we could supply it with meaning through section 13, by holding that all agreements, even those not made under the statute, but still governed by the act of 1790, must be made before a shipping commissioner, and that it was a breach of the act of 1872 to make any sort of contract without that formality. In other words, I was asked to put a forced construction upon section 13, in order to find an intelligible meaning for this

part of section 14. This I refused to do, because, taking other parts of the statute into the account, it was plain that "all agreements" meant all those for foreign voyages; that was the *ratio decidendi.* I added the incidental remarks upon the difficulty of finding any meaning for that clause, which I still adhere to, and make a part of my decision in this case. The supreme court affirmed my decision upon the ground upon which I rested it. *U. S.* v. *The Grace Lothrop,* 95 U. S. 527.

There is another point in this case like the principal one in *The Grace Lothrop,* but not identical with it. Before the Revised Statutes were passed there would have been no pretence for a conviction of the offence here charged. That statute punished certain things done contrary to its provisions; and contracts for a voyage from Boston to South Amboy were not touched by it. See 1 Holmes, 345. When the revisers put the laws together it was their declared duty and intention not to change them. If, by collocating the law of 1872 with what was left of that of 1790, and using the expression "contrary to the provisions of this title," instead of "this act," they have brought coasting vessels, making 20 or 30 trips a season, into peril of this enormous penalty of $200 for each seaman, instead of $20 and the highest-going rate of wages, they have made a serious mistake.

I think, however, that this section 4515, placed at the end of the provisions concerning foreign voyages, if it can mean anything, means to punish a breach of those provisions, as if it read, seamen engaged or supplied contrary to the provisions hereinbefore made. The subject of coasting voyages is taken up later, and distinct penalties are provided in the very section 4521 which deals with that subject; namely, that the owners shall pay the highest rate of wages, and the master a penalty of $20.

It is to be remembered that these voyages are of a character requiring no such stringent regulations as are applied to long voyages, and are unable to bear such penalties. The master, more often than not, sails the vessel on shares, fur-

nishing the victuals and men, and is the sole person responsible for the mode in which the business is conducted.    I am not ready to believe that congress intended to punish the guilty by a penalty of $20, and the innocent one of $200.    Of course, they might do so by a blunder; but that is not to be lightly imputed, and I find that a perfectly reasonable and not unnatural construction of section 4515 refers to the foregoing parts of the title.    If this construction is wrong, the sections are repugnant, because section 4521 purports to impose the penalties, and all the penalties, for a violation of section 4520, and the particular provision for coasting voyages must prevail over the one for voyages in general.

I am, therefore, of opinion: (1) That the offence of receiving on board ship a seaman who has been engaged contrary to title 53 is an impossible one, because there is nothing in that title that requires an engagement to be made before the seamen are received on board; (2) if that section has any application, it has none to coasting voyages; and, as a corollary, that no penalty was incurred by the Thomas W. Haven, when the master, being about to proceed from Boston to South Amboy, received seamen on board without having made a written contract with them.

Libel dismissed.