## JOHNSON v. STANDARD OIL CO. OF NEW JERSEY.

### No. 2379.

District Court, D. Maryland.

July 8, 1940.

Hillman & Hillman, of Baltimore, Md., for libellant.

Ritchie, Janney, Ober & Williams, of Baltimore, Md. (by Southgate L. Morison, of Baltimore, Md.), for respondent.

WILLIAM C. COLEMAN, District Judge.

The present libel presents a claim for an additional month's wages, and transportation from New York to Texas City, Texas, on the ground that the libellant, who shipped as second cook on the respondent's tanker, James McGee, was improperly discharged.

The material facts as to the employment are as follows: The articles were signed at Texas City, Texas, on October 28, 1939, and provided for a voyage "from the port of Texas City, Texas, to Halifax, Nova Scotia, and such other ports and places coastwise as the Master may direct, carrying any kind of cargo, including petroleum and/or its products, in bulk or otherwise, and back to a final port of discharge in the United States, for a term of time not exceeding twelve calendar months."

The vessel sailed from Texas City on October 29th, and arrived in Halifax on November 9th. Passage of the Neutrality Act by the Congress, 22 U.S.C.A. § 245j et seq., having occurred meanwhile, on arrival at Halifax the respondent sold the vessel to the Panamaian Company, her flag was changed, and the voyage terminated.

Respondent thereupon transported the crew, including the present libellant, from Halifax to New York, by rail, arriving at the latter place on November 11th, where the entire crew, including the libellant, were paid off before the United States Shipping Commissioner, and it is not disputed that they were given everything in the matter of wages, bonus, et cetera, up to and including November 11th, that their articles called for.

The respondent maintains that the contract with libellant has been fully carried out, in that although the vessel itself did not return to a port in the United States, the libellant was transported there by rail, and paid full wages due up to the time of his discharge there.

Libellant claims an extra month's wages, under the provisions of 46 U.S.C.A. § 594, and also cost of transportation back to Texas on the theory that, while the shipping articles are broad in their terms and when taken liberally permit termination of the voyage at *any* port of the United States, nevertheless, only such ports are contemplated as the vessel had been accustomed to enter; and that since, as is conceded, New York was not one of such ports, nor were Atlantic Coast ports generally, but only Gulf or Texas ports, libellant is entitled to be carried back to the latter, or to the equivalent in money. The statute upon which respondent relies is as follows: "Any seaman who has signed an agreement and is afterward discharged before the commencement of the voyage or before one month's wages are earned, without fault on his part justifying such discharge, and without his consent, shall be entitled to receive from the master or owner, in addition to any wages he may have earned, a sum equal in amount to one month's wages as compensation, and may, on adducing evidence satisfactory to the court hearing the case, of having been improperly discharged, recover such compensation as if it were wages duly earned."

■ I do not think the above statute applies because 46 U.S.C.A. § 544, expressly excepts the present type of voyage from the provision of Sec. 594 just quoted, Sec. 594 being part of the Shipping Commissioner's Act of June 7, 1872, referred to in Sec. 544, which is as follows: "None of the provisions of an Act entitled 'An Act to authorize the appointment of shipping commissioners by the several circuit courts of the United States to superintend the shipping and discharge of seaman engaged in merchant ships belonging to the United States, and for the further protection of seamen' shall apply to sail or steam vessels engaged in the coastwise trade, except the coastwise trade between the Atlantic and Pacific coasts, or in the lake-going trade touching at foreign ports or otherwise, or in the trade between the United States and the British North American possessions, or in any case where the seamen are by custom or agreement entitled to participate in the profits or result of a cruise, or voyage."

984

In United States v. The Grace Lothrop, 95 U.S. 527, 24 L.Ed. 514, the Supreme Court was called upon to construe another part (with which we are not here concerned) of the Shipping Commissioner's Act of June 7, 1872, and in the course of its opinion the Court said: (page 532 of 95 U.S., 24 L.Ed. 514) "Though the act last referred to [which is the present Section 544 here in issue] is subsequent in date to the supposed wrongful acts of the respondent, as alleged in the libel, yet the language of the act is in terms an explicit declaration that Congress never intended that the original act should apply to vessels engaged in any part of the coasting trade, except that between the Atlantic and Pacific coasts."

■ The above statement, although in a sense dicta, must be followed, with the result that Section 544, Title 46, is to be interpreted as though it read as follows: "None of the provisions of the Shipping Commissioner's Act shall apply to vessels engaged in coastwise trade, or in the lake-going trade, touching at foreign ports or otherwise, or in the trade between the United States and the British North American possessions, or in any case where the seamen are by custom or agreement entitled to participate in the profits or result of a cruise, or voyage, with the single exception of the coastwise trade between the Atlantic and Pacific coasts." Thus, Section 544 is inapplicable to the present situation because the voyage was not from coast to coast.

The same interpretation has been given to Section 544 in United States v. Bain, D. C., 40 F. 455; Burdett v. Williams, D. C., 27 F. 113; Ross v. Bourne, D.C., 14 F. 858; and Old Point Fish Company v. Haywood, 109 F.2d 703, a decision of the Circuit Court of Appeals of this Circuit.

■ Libellant's counsel asserts that even though there is no statutory provision for the allowance of the extra wages, libellant is nevertheless entitled thereto, because respondent has breached the terms of employment. But I find no breach.

The case of The Ipswich, D.C., 46 F.2d 136, a decision in 1930 by Judge Soper is consonant with the conclusion here reached. There the articles were similar to those in the present case, calling for a voyage from Baltimore to the Pacific Coast and back to a final port of discharge on the Atlantic Coast, for a term not exceeding twelve months. The injured seaman was discharged at such a port, after a voyage of about three months only, with wages for that time. Judge Soper held that he was not entitled to additional wages.

It is further argued for libellant that, although wages for the maximum period of twelve months cannot of course be claimed here, the Court should nevertheless strike some happy medium of from one to three months, and should allow additional wages for that additional time, on the theory that it was never contemplated that the length of the voyage would be only fourteen days, and that this vessel, had the emergency situation not intervened, would have gone to at least one of the usual southern ports at which it customarily calls.

This argument does not convince me as being meritorious, in view of the fact that the articles are very broad, and allow the termination of the voyage at any "final port of discharge in the United States." It is true, New York was probably not contemplated when the voyage was begun; but it is reasonable to take into account war conditions, and to interpret the contract as permitting curtailment of the voyage on such account, precisely as was done.

Finally, with respect to the claim for allowance of transportation to Texas, libellant has not testified at this trial; in his deposition he did not ask for transportation beyond what was given to him, i. e., to New York; Baltimore was his home; he had previously shipped from there on the same vessel, and therefore it is a reasonable presumption that he did not want to be carried back to Texas City; in other words, that he did not want what his counsel is now asking should be done for him. There is no statute that governs such a situation, and clearly a case for the allowance of further transportation is not made out. Furthermore, for aught that appears, it may well be that libellant has had his transportation paid from Baltimore to Texas City, or some other point, by some subsequent employer, and to allow it now might be a double payment. The record is devoid of evidence as to just when or where the libellant got reemployment.

I will sign a decree in accordance with this opinion.