SCHMIDT v. PACIFIC MAIL S. S. CO.

(District Court, N. D. California, First Division.  October 29, 1913.)

No. 15,483.

1. SEAMEN (§ 20*)—SUIT FOR WAGES—SET-OFF.
    Under a custom that, on the arrival in port of a vessel which makes regular trips, the seamen who signed for the voyage remain on duty during the time of discharging and reloading, receiving the same pay as on the voyage, with an extra allowance for victualing, the employment while so in port is under the original contract of hiring, and any matter which would be a set-off against a claim for wages during the voyage may be pleaded as a set-off against a claim for such port wages.
    [Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 86–91; Dec. Dig. § 20.*]

2. SEAMEN (§ 31*)—LIABILITY OF STEWARD—ARTICLES UNACCOUNTED FOR.
    The chief steward of a vessel cannot be held liable for articles in his charge as such and unaccounted for at the end of a voyage, in the absence of proof that they were lost through his fault or negligence.
    [Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 212–214; Dec. Dig. § 31.*]

In Admiralty.  Suit by Ed. Schmidt against the Pacific Mail Steamship Company.  On exceptions to answer, and final hearing on the merits.  Exceptions overruled, and decree for libelant.

James W. Ryan, of San Francisco, for libelant.
Knight & Heggerty, of San Francisco, for respondent.

DOOLING, District Judge.  Libelant shipped as chief steward, on respondent's steamship City of Sydney, in July, for round trip voyage from San Francisco to Balboa.  The voyage ended in September, and on September 24th libelant received from the shipping commissioner all of his wages therefor.

[1] The City of Sydney makes regular trips between these ports, and while in San Francisco, during the time this controversy arose, was engaged in discharging freight brought in, and loading freight for the next trip.  It is the custom for the employés to remain on duty while in port, unless they receive notice of discharge from such employment, and to sign articles for the next trip on the day preceding the next sailing day.  While in port they receive what is known as "port pay"; that is to say, their regular wages plus $1 per day for victualing, as no meals are served on the vessel during her stay.  Following this custom, libelant, having received no notice of discharge, remained in the service of respondent while the City of Sydney was discharging and receiving freight for its next trip, from September 25th to October 1st, inclusive.  Upon October 1st he was told that his services would not longer be required.  Upon demanding his wages for this service in port, he was informed that, while his wages amounted to $30.33, he could not receive them, because of the loss of certain silverware intrusted to him as chief steward when he shipped in July, and not accounted for by him at the end of the trip

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

on September 24th, or thereafter, and amounting in value to $32.90, which sum respondent claimed the right to offset against his wages of $30.33, earned while in port. This set-off is pleaded as a defense, and libelant interposed exceptions thereto, on the ground that it did not arise out of the same contract as that upon which the suit was brought; that, if entitled to offset this loss at all, respondent should have done so at the time the libelant received his wages on September 24th at the end of the voyage for which he shipped; and that the employment of libelant while in port was under a new contract, beginning at the time he signed off at the end of the voyage.

The rule is well settled that in the admiralty court a set-off, to be allowed, must grow out of the same transaction as that which must be proven to support the libel. But it seems to me that, as there was but one contract of hiring here, that is to say, the contract entered into in July, when libelant shipped as chief steward, and as he would have to prove this contract in order to claim that he continued in the employ of respondent after receiving his wages and signing off on September 24th, by reason of the custom before mentioned, the matters set up are sufficiently connected with the contract upon which he relies to constitute, if sustained, a proper set-off, and for that reason the exceptions to the special defense are overruled.

[2] But I cannot agree with respondent's contention that under the facts of the case here the set-off should be allowed; and this for at least two reasons. There is no proof, in the first place, that libelant ever received into his charge the articles mentioned. Libelant testifies that no inventory was made, and that he does not know whether the articles were on the vessel when he took charge or not. The only other testimony is that of the port steward, who says that he told libelant, when he put him in charge, to make an inventory and check it up with the equipment book, and that he later asked him how he found things, to which he replied: "Everything is all right." This is not sufficient to establish the receipt of the articles by libelant.

The other serious reason militating against the allowance of the set-off claimed is that it would make the chief steward under an ordinary contract of employment an insurer of all articles intrusted to him. There is no suggestion or proof here of negligence, and I am not prepared to concede that, even were it clearly shown that the articles were intrusted to the libelant, the mere fact that they were not on the vessel after a two months voyage would render him responsible for their loss. Nor do I believe that such a claim, where respondent did not check up the articles intrusted to the libelant before the voyage, and offered no suggestion or proof of negligence on his part, but undertook to hold him to the responsibility of an insurer, furnishes the sufficient cause required by section 4529 (U. S. Comp. St. 1901, p. 3077) to relieve respondent from the penalties in that section provided.

A decree will therefore be entered for libelant as prayed for.