## THE ELLA PIERCE THURLOW.

District Court, E. D. Virginia. December 27, 1926.

### No. 4596.

1. **Seamen ⬤⟹7—Shipping articles of alien seamen for voyage from American to West Indian port and return, signed before captain, held valid.**

Shipping articles of alien seamen for a voyage from an American to a West Indian port and return, signed before the captain, *held* valid.

2. **Seamen ⬤⟹23—Advances of clothing held not to invalidate contract for seamen's service (Act June 5, 1920, § 32 [Comp. St. § 8323]).**

That a master advanced necessary clothing to seamen, some from the slop chest and some that was purchased for the purpose, contrary to Act June 5, 1920, § 32, amending Act June 26, 1884, § 10, as amended (Comp. St. § 8323), *held* not to invalidate their contract for service.

3. **Seamen ⬤⟹21 (7)—Seamen electing to breach contract held entitled to then earned wages, where master failed to log them for desertion, but not to penalty (Comp. St. § 8381).**

Seamen, shipping for a voyage from American to West Indian port and return, electing to breach their contract in American port, and master having allowed them to go, and failing to log them as deserters, as required by Comp. St. § 8381 (Rev. St. § 4597), *held* entitled to their then earned wages, but not to penalty.

4. **Seamen ⬤⟹18—Additional wages are not recoverable as penalty, when seamen were in fault.**

The statutes providing for recovery of additional wages as penalty are for protection of seamen from arbitrary and unwarranted acts of the master, and the penalty is not enforceable where the seaman was in fault.

5. **Seamen ⬤⟹18—Seamen held entitled to penalty, where their discharge as "deserters" was unjustified.**

Seamen, who might have been discharged for unfitness, but were not, master choosing to dispense with their services because other men would not stay, and who were willing to comply with their contract, were not "deserters," and hence action of master, under advice of shipping commissioner, in declaring them so, was unjustified, and they were entitled to penalty.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Deserter.]

In Admiralty. Suit by Charles Swanson and others against the schooner Ella Pierce Thurlow. Decree for libelants.

Jacob Louis Morewitz, of Newport News, Va., for libelants.

Hughes, Vandeventer & Eggleston, of Norfolk, Va., for respondent.

GRONER, District Judge. This is a libel for seamen's wages and for the penalty for nonpayment provided by statute.

The conclusion reached by me is that the shipping contract entered into by the libelants, for a voyage from New York to Hampton Roads and thence to the West Indies, was valid in all respects. It is true that all of the libelants except one, West, were aliens; but there is nothing in the law prohibiting alien seamen from signing on for a voyage such as I think this undoubtedly was. All of the parties thoroughly understood the contract, and that it contemplated a voyage from the United States to a port, or ports, in the West Indies, and thence back to the United States. The language of the shipping articles is, in my opinion, susceptible of no other construction than this, and certainly the purpose and intent of the parties on both sides was that

this should be the voyage, and there is nothing in the evidence to show the slightest deviation or departure from this arrangement, except the conduct of the libelants on arrival in Hampton Roads.

[1] The position taken by the libelants, that the articles were void, because the men had not signed on before a United States shipping commissioner, I think is not well taken. They did sign on before the captain, and this is all that is required. Some point has been made of the fact that the captain testified that he was not personally present during the time the men signed on. What he said was that he was in and out of the room. The evidence, however, does disclose that he was present with the men during the signing on process and he also signed the articles.

[2] I am also in disagreement with libelants' claim that the articles were void because the master had made advances, contrary to section 8323, Comp. Stat. (as amended by Act of June 5, 1920, § 32). The evidence satisfactorily shows that as to libelants Swanson and Haagenson the articles of clothing issued to them were issued out of the slop chest of the vessel; that as to the articles of clothing furnished to the other men they were purchased for the ship, taken on board the ship, and issued to the men. They were necessary for the men; indeed, they were indispensable. That they happened not to be then in the ship's slop chest certainly, I think, can make no difference. They were charged to the vessel, and paid for by the master, and the men who received them were debited with their cost. This was not only proper, but desirable.

[3] When the vessel arrived in Hampton Roads, three of libelants elected to breach their contract. The matter was taken up before the shipping commissioner, and he informed them that their duty was to make the voyage, notwithstanding which they insisted on being discharged. The evidence rather tends to show that the master allowed them to go, and under the circumstances, and particularly in view of the fact that he failed to log them for desertion, I think this creates a situation as the result of which they were entitled to their then earned wages. The action of the master in depositing with the shipping commissioner less than this amount may have justified the bringing of a libel for the amount they were entitled to; but, except for the failure of the master to log them properly, as required by section 8381, Comp. Stat. (section 4597, R. S.), they would, in my opinion, have been entitled to nothing, for the reasons stated above, namely, that they had breached their contract and, by their action at the last moment and as the ship was about to sail, put the master both to trouble and considerable expense.

[4] The purpose of Congress, in enacting the penalty statute, was to protect the rights of seamen, but was not to impose upon vessel owners hardships and penalties for conduct consistent with a proper regard for the protection of their own interests. The statute is intended to protect the seaman against the arbitrary and unwarranted acts of the master, but where the fault is wholly, as in this case, with the seaman, it would be an injustice to exact the penalty.

[5] In the case of the libelants Larson, West, and Bergrren, the case is somewhat different. They had shipped on with the other three men, but the trip down the coast had demonstrated their unfitness for the work. They might have been discharged for this cause, but they were not. The master of the vessel was willing to retain them, if the other three men were willing to stay; but, since they were not, he chose to dispense with their services. They were not deserters, because they were willing to comply with their contract, and expressed this willingness, apparently, a number of times to the master.

Under the circumstances, the action of the master, under the advice of the shipping commissioner, in declaring them deserters, was unjustified, and the penalty in their case is properly applicable.