## THE SHARON.

## GROTHE v. ATLANTIC REFINING CO. et al.

District Court, E. D. Virginia.
Sept. 3, 1931.

Jacob L. Morewitz, of Newport News, Va., for libelant.

John W. Oast, Jr., of Norfolk, Va., for respondents.

WAY, District Judge (after stating the facts as above).

As numerous issues as to the law applicable to this case have been presented in the arguments and briefs, it is considered desirable briefly to state the court's reasons for its conclusions of law.

Before taking up these issues, attention is called to the fact that it is alleged in the libel that libelant was employed as third officer of the Sharon at $150 per month, and that as such he faithfully performed his duties until the ———— day of June, 1930, "when he *was left behind* at Atreco," and further that libelant after being paid $22.50, one-half of his wages, was *"left behind* at Atreco" without being paid or tendered any part of the remainder of the $22.50 which he alleges was then admitted to be due him. Apparently libelant at the time the libel was filed contended that he was left behind at Atreco, but there are no facts alleged tending to show how he happened to be left behind. In the libel no mention is made of any alleged mutual release or discharge of libelant, but in his testimony given in open court and in the argument by his counsel it was urged that libelant was released at Atreco by the mutual consent of himself and respondent the Atlantic Refining Company. This contention is stated in the brief of counsel in the following language: "Libellant was induced to leave the vessel at Atreco and no entry of alleged desertion was made in any log book." The case has been heard and considered upon the latter theory, namely: Libelant's contention that there was a mutual release at Atreco which accounts for his leaving the vessel. While there is conflict as to what actually occurred at Atreco, Tex., on June 21, 1930, the testimony and the circumstances disclosed thereby, considered as a whole, clearly show that libelant after the arrival of the Sharon at Atreco and shortly before that vessel was to sail, on the return voyage, willfully deserted, and that the master did not learn of the desertion until about time for the vessel to sail.

Other points discussed in the arguments and briefs are:

1. Was libelant lawfully engaged? This contention is based upon the fact that libelant did not sign on the articles before a shipping commissioner. On that point the court takes the view that the provisions of the statute (section 563, title 46, USCA) are permissive, not mandatory, in the instant case. That section provides that shipping commissioners "may," not "shall," "ship crews for any vessel," etc., so that signing on before a shipping commissioner is not made compulsory. See The Ella Pierce Thurlow (D. C.) 18 F.(2d) 675 affirmed Swanson v. Torry (C. C. A. 4th) 25 F.(2d) 835.

In this case all of the crew with the exception of libelant and two others were signed on before a commissioner on June 11, 1930. The shipping commissioner had left before libelant came aboard on June 12th, so that libelant signed on before the master, Captain Causey, and then at the direction of the master proceeded to sign on two other members.

The court is also of the opinion that the shipping articles in the instant case do set forth "the nature and, as far as practicable, the duration of the intended voyage or engagement, and the port or country at which

the voyage is to terminate" with all the certainty and definiteness that is contemplated by the statute (Rev. St. § 4511, section 564, title 46, USCA), and is therefore unable to agree with the further contention of counsel for libelant that the articles because of vagueness and uncertainty as to the contemplated voyage or voyages are in violation of section 578, title 46, and void.

2. It is urged that the attempt to disrate libelant during the voyage worked his discharge before he reached Atreco on June 21st. It is true as set forth in the findings of fact that during the voyage the master of the Sharon, provoked by the insubordination of libelant, made a threat which, had it been carried out, would have disrated libelant. However, the evidence clearly shows that no attempt to carry out the threat was made by the master, and libelant upon reaching Atreco, pursuant to section 597 of title 46, US. CA, requested and promptly received $22.50, one-half of his wages then earned, indicating that it was libelant's intention to continue with the ship, and by that time any thought of disrating libelant had apparently passed out of the master's mind.

3. It is also urged that since no entry of the alleged desertion of libelant was made in any logbook as required by section 702 of title 46, USCA, respondent is precluded from making the defense that libelant deserted. The statute, after providing the manner in which any offense enumerated in section 701 of title 46 shall be entered, authenticated and brought to the attention of the alleged deserter, contains the following provisions: "In any subsequent legal proceedings the entries hereinbefore required shall, if practicable, be produced or proved, and in default of such production or proof *the court* hearing the case *may, at its discretion,* refuse to receive evidence of the offense."

It will appear from the findings of fact that the entry made by the master opposite libelant's signature thereto does not comply with the statute so that the offense was not *logged or authenticated in the manner specified.* Since libelant had left the vessel shortly before it sailed from Atreco and his whereabouts were unknown to the master, the latter had no opportunity to furnish libelant with a copy of such entry and to have the same read over to him in accordance with the provisions of the statute. It has been earnestly urged upon the court that because of these facts the defense that libelant deserted at Atreco should be disregarded, but no sound reason tending to the furtherance of

substantial justice has been advanced by libelant's counsel why the court in the exercise of the discretion reposed in it by the statute should refuse to receive evidence of libelant's desertion, notwithstanding the irregularity in the entry made by the master. Were this a situation which had been brought about in whole or in part by the arbitrary or unwarranted acts of the master or owner of the Sharon, it would be entirely proper for the court to exclude such evidence. The purpose of the statutes relied on by libelant is to protect seamen against arbitrary and unwarranted acts and oppression by the master, not to aid a seaman in taking advantage of his own wrongdoing. As was said by Judge Groner in The Ella Pierce Thurlow Case (D. C.) 18 F.(2d) 675, at page 676, with reference to section 596: "The statute is intended to protect the seaman against the arbitrary and unwarranted acts of the master, but where the fault is wholly, as in this case, with the seaman, it would be an injustice to exact the penalty." That decision was approved as to the point discussed by Judge Groner by our Circuit Court of Appeals in Swanson v. Torry, 25 F.(2d) 835.

Except for the peculiar circumstances of this case, the court would be inclined to allow libelant to recover the balance of his wages of $22.50, but without penalty, as was allowed some of the seamen in the Thurlow Case. But in this case the evidence discloses that the master promptly, after he learned of libelant's desertion, made the entry in question on the shipping articles, which entry, while it does not comply with the letter of the statute, nevertheless clearly shows the offense which was committed by libelant at Atreco on June 21st, to wit, desertion. Furthermore, the master after arriving at Philadelphia on the return voyage promptly paid over the residue of wages to the shipping commissioner there. Had libelant been available, there is nothing in the record to justify a conclusion the master would not promptly have advised him of the charges that had been lodged against him, but due to the libelant's disappearance the master so far as the record discloses did not have that opportunity. Some time after libelant had been advised of the action taken by the master, instead of protesting the irregularity of the record made, he proceeded to submit his claim to the shipping commissioner at Philadelphia and also to the Commissioner of Navigation, and the shipping commissioner after hearing libelant's statement and then the master's statement declared the wages

forfeited for desertion. In this connection it is to be noted that libelant did not make any claim before the shipping commissioner until September, 1930, and that the first claim he ever made against respondent was in November, 1930, while the libel in this case was not filed until February 9, 1931, after which apparently for the first time the irregularity of the entry made by the master was called in question.

Under these circumstances the court has reached the conclusion that there has been substantial compliance with the true spirit and intent of section 702 of title 46, USCA, and that there ought to be no recovery by libelant.

Upon presentation of a decree in conformity with the conclusions announced, the same will be entered dismissing the libel.