### McALLISTER v. AMERICAN TRADING & PRODUCTION CORPORATION.

#### No. 335 of 1948, Admiralty.

United States District Court
E. D. Pennsylvania.

March 14, 1950.

Freedman, Landy & Lorry, Philadelphia, Pa., for libellant.

Krusen, Evans & Shaw, Philadelphia, Pa., for respondent.

FOLLMER, District Judge.

The libellant here is seeking the imposition of the so-called "two for one" penalty provisions of the Revised Statutes, § 4529, 46 U.S.C.A. § 596. He claims that certain of his wages were wrongfully withheld following his failure to rejoin the S. S. "Baltimore Trader" at Shellhaven, England, on March 11, 1948.

Respondent has averred that any sums due libellant were lawfully and properly forfeited under Revised Statutes, § 4596 et seq., 46 U.S.C.A. § 701 et seq., and applied in an amount "sufficient to defray any expenses which shall have been properly incurred in hiring a substitute" due to libellant's actions on or about March 10, 1948, "for neglecting or refusing without reasonable cause to join his vessel or to proceed to sea in his vessel, or for absence without leave at any time within twenty-four hours of the vessel's sailing from any port, either at the commencement or during the progress of the voyage, or for absence at any time without leave and without sufficient reason from his vessel and from his duty, * * *."

Following the trial, the libellant indicated that the facts of the case do not call for

the imposition of the said penalty provisions of the Act, and accordingly asks judgment in the exact amount of the alleged unpaid wages, to wit, $98.50.

## Findings of Fact.

1. The libellant is Mack V. McAllister.

2. The respondent is American Trading and Production Corporation.

3. At all times mentioned herein, the respondent operated and controlled the S. S. "Baltimore Trader," engaged in foreign commerce.

4. Libellant signed shipping articles as a member of the crew of the S. S. "Baltimore Trader" on February 17, 1948, in the capacity of steward and was employed on board that vessel in the aforesaid capacity from February 17, 1948, to noontime of March 11, 1948.

5. The vessel proceeded from Philadelphia to Aruba, Netherlands West Indies, to obtain a cargo of oil and then proceeded to Shellhaven, England, arriving March 10, 1948, whereupon it discharged its entire cargo.

6. Upon clearance by Customs, and consultation with the vessel's London Agents concerning the rate of cargo discharge, the Master set the time for the vessel's departure from Shellhaven at 12:00 o'clock noon, March 11, 1948.

7. The crew was given shore leave, and the Chief Mate posted the notice of departure on the liberty board by the vessel's gangway about 1:30 o'clock p. m. on March 10, 1948; this notice read, "Liberty expires 12:00 o'clock noon, March 11, 1948."

8. The Purser also posted like notices for sailing in the officers' and crew's messhalls.

9. A few minutes before 2:30 o'clock p. m. on March 10, 1948, libellant received a pay draw aboard the vessel from the Purser.

10. About 2:30 o'clock p. m. on March 10, 1948, the Purser saw the libellant go ashore by means of the gangway.

11. Libellant knew the time at which the vessel was to sail and so stated to the Paymaster.

12. Libellant missed the vessel because he did not wake up on time, and not because he did not know when the vessel was to sail.

13. Libellant did not return to the vessel prior to its sailing on March 11, 1948.

14. About 12:00 o'clock noon on March 11, 1948, the Purser took a crew check and ascertained that the libellant and Goodrich, another seaman, were not on board the vessel. About 1:30 o'clock p. m. on the same date, the Purser made another crew check, at which time he ascertained that both the libellant and Goodrich were still not on board the vessel. After each crew check, the Purser notified the Master that the libellant and Goodrich were not on board.

15. Although the Pilot was on board at 1:30 o'clock p. m. and tug was available, the vessel's departure was delayed until 3:35 o'clock p. m. March 11, 1948.

16. At said time of departure, libellant had not appeared, nor had he communicated with the vessel in any way concerning his whereabouts.

17. As the duties of the Steward include the accounting and supervision of foods and supplies, it was imperative to replace the libellant.

18. The second cook held a Steward's certificate and while qualified to assume the position of Steward, refused so to do.

19. All effort was made by the Master to replace the libellant from the ship's personnel, without success.

20. Being unable to find an individual to serve as Steward, the Master, after consulting with the members of the Steward's department consisting of the Chief Cook, the second cook, and the Union delegate, and in accordance with an agreement reached with these individuals, radioed the respondent at New York for a Steward replacement at the loading port.

21. In further conformity with the agreement reached at the conference of the Master, the Chief Cook, the second cook, and the Union delegate, the duties of the Steward on the voyage from Shellhaven to Aruba were assigned by the Master to the

Chief Cook and second cook, who shared the Steward's duties as well as his pay.

22. The respondent engaged another Steward and arranged for him to fly from the United States to Aruba, Netherlands West Indies, where he joined the vessel as Steward.

23. After the libellant missed the vessel on March 11, 1948, he reported to the ship's agent in London and shipped as a second cook on the S. S. "William H. Wilmer" from Southampton, England, on March 18, 1948, returning to Norfolk, Virginia, and signing off that vessel on April 2, 1948.

24. On March 11, 1948, the date libellant failed to join his ship in Shellhaven, there was due and owing to the libellant by the respondent the sum of $98.57 as earned wages.

25. The S. S. "Baltimore Trader" incurred expenses in the amount of $310.79 in hiring libellant's substitute.

### Discussion.

The libellant has withdrawn his request for the imposition of the so-called "two for one" penalty provisions of the Revised Statutes, § 4529, 46 U.S.C.A. § 596, and is seeking merely his withheld earned wages of $98.57.

The pertinent portion of the applicable statute, 46 U.S.C.A. § 701, reads as follows:

"Whenever any seaman who has been lawfully engaged or any apprentice to the sea service commits any of the following offenses, he shall be punished as follows:

\* \* \* \* \* \*

"Second. For neglecting or refusing without reasonable cause to join his vessel or to proceed to sea in his vessel, or for absence without leave at any time within twenty-four hours of the vessel's sailing from any port, either at the commencement or during the progress of the voyage, or for absence at any time without leave and without sufficient reason from his vessel and from his duty, not amounting to desertion, by forfeiture from his wages of not more than two days' pay or sufficient to defray any expenses which shall have been properly incurred in hiring a substitute."

The libellant did not appear at the trial and consequently was not available for cross-examination. The case was tried solely on depositions taken by respondent of several of its employees. The facts are not in dispute and in my judgment place the equities of the entire situation clearly with the respondent.

The libellant was the Steward aboard the S. S. "Baltimore Trader," having signed Foreign Articles at Philadelphia for the voyage in question. The ship loaded a cargo of oil at Aruba, Netherlands West Indies, arriving at Shellhaven, England, at 1:07 o'clock p. m., March 10, 1948. The time for the departure of the ship was set by its Master at 12:00 o'clock noon the following day, March 11, 1948. This information was duly and properly posted as soon as the vessel was secured, and libellant was fully informed of the same.

Shortly after noon of March 10, 1948, libellant received a pay draw aboard the vessel from the Purser and immediately went ashore. He did not return to the vessel at all during the night of March 10, or the morning of March 11. At 12:00 o'clock noon, March 11, the time set for departure, a crew check was made and it developed that libellant and another crew member were missing. At this time the Pilot was on board the vessel and a tug was standing by. The time of departure was delayed to 3:35 o'clock p. m. of March 11, and still the libellant had not appeared, nor had he communicated with the vessel to explain his whereabouts.

The Steward occupies a very important position on the vessel. It is his responsibility to see that there is an adequate supply of food and supplies on board for the voyage ahead and to properly account for the same; he is responsible for the feeding of the entire crew.

The Steward is duly certified as such by the United States Coast Guard. In this crew only one other member was qualified to serve as Steward, namely, the second cook, and he refused to serve. After consultation with the members of the Steward's

department, it was decided to request a replacement to join the vessel on its arrival at Aruba, the loading port, and during the interim to delegate the duties of the Steward to the Chief Cook and second cook, who jointly assumed the duties of the position and divided the wages.

On the receipt of the request for replacement by the Master, respondent immediately dispatched a qualified Steward by air to Aruba at a cost of $206.71. Libellant does not deny that respondent spent at least $206.71 to effect the replacement, but stoutly disputes the necessity therefor. Libellant attempts to shift the burden on respondent, contending there is no proof why libellant missed the ship; that respondent has not proven that libellant neglected or refused to join the ship, or did either without reasonable cause.

█ The plain unvarnished truth of the matter here is that libellant was absent without leave at the time set for sailing and he did not then, nor has he since given sufficient reason therefor. Actually, he has since stated that he failed to join the vessel because he did not wake up in time. Without appearing at the trial, he cannot now expect the Court to speculate on the validity of his absence. He was not there when he should have been there and by so absenting himself he caused the respondent to incur an expenditure in excess of the amount of his withheld wages. The expense of hiring a substitute under the circumstances here developed was not only fully justified, properly incurred, and not excessive, but within the penalty provision of the statute.

█ Furthermore, libellant contends that the deduction from his wages was improper because the Master did not comply with the provisions of Revised Statutes, § 4597, 46 U.S.C.A. § 702 relative to the entry of the offense in the log book.

Under circumstances involving the same principles as in the instant case, the court in The Sharon, D.C.E.D.Va., 52 F.2d 481, at page 484, held as follows: "It will appear from the findings of fact that the entry made by the master opposite libellant's signature thereto does not comply with the statute so that the offense was not logged or authenticated in the manner specified. Since libellant had left the vessel shortly before it sailed from Atreco and his whereabouts were unknown to the master, the latter had no opportunity to furnish libellant with a copy of such entry and to have the same read over to him in accordance with the provisions of the statute. It has been earnestly urged upon the court that because of these facts the defense that libellant deserted at Atreco should be disregarded, but no sound reason tending to the furtherance of substantial justice has been advanced by libellant's counsel why the court in the exercise of the discretion reposed in it by the statute should refuse to receive evidence of libellant's desertion, notwithstanding the irregularity in the entry made by the master. Were this a situation which had been brought about in whole or in part by the arbitrary or unwarranted acts of the master or owner of the Sharon, it would be entirely proper for the court to exclude such evidence. The purpose of the statutes relied on by libellant is to protect seamen against arbitrary and unwarranted acts and oppression by the master, not to aid a seaman in taking advantage of his own wrongdoing. As was said by Judge Groner in The Ella Pierce Thurlow Case (D.C.) 18 F.2d 675, at page 676, with reference to section 596: 'The statute is intended to protect the seaman against the arbitrary and unwarranted acts of the master, but where the fault is wholly, as in this case, with the seaman, it would be an injustice to exact the penalty.' * * * *"

The fault here lying wholly with the libellant, it would not only be an injustice to exact a penalty of respondent for nonpayment of wages, but it would be equally unjust to require payment by the respondent of the wages when the respondent had, with full justification, properly incurred a reasonable expense of more than twice the amount of the wages in providing a replacement, as specifically authorized by the Act.

### Conclusions of Law.

1. This Court has jurisdiction of this suit and over the parties thereto.

2. Under all the facts and circumstances, the Master of the vessel and the respondent were justified in replacing libellant and in lawfully deducting from the libellant's wages the expenses incurred by the vessel in hiring a substitute.

3. That the sum of $98.57 was withheld from libellant's wages with full and sufficient cause under the circumstances and under the law.

4. That respondent is entitled to retain the sum of $98.57 on account of expenses incurred by the vessel in hiring a substitute.

5. That libellant is not entitled to penalties for such withholding.