William T. GARDNER, Libellant,

v.

THE L. N. DANZLER, her engines, tackle, etc., in rem, and Norfolk Dredging Company, in personam, Respondents.

No. 8018.

United States District Court
E. D. Virginia,
Norfolk Division.

Oct. 15, 1959.

penalties over a period of nearly five years. It is contended that, during the entire period of his continuous employment, respondent deducted $1 per day from libellant's wages to cover food rations provided by respondent. At no time did libellant ever sign articles or any other agreement in writing. It is conceded that, if the daily deductions for food rations were permitted by law, and that such deductions were in accordance with the agreement of the parties, the libellant would have no claim. As the parties are in apparent disagreement as to whether the daily ration deductions were in accordance with the terms of the employment contract between libellant and respondent, the Court must retain the matter upon the docket to determine this single question of fact. In all other respects the respondents must prevail.

It is conceded by proctors that Norfolk Dredging Company conducts dredging operations in and about the harbors at various localities on the East Coast. At times, for example, the operations require a period of weeks in certain waters such as the Potomac River in the vicinity of Washington, D. C. It is likewise stipulated that at least some, if not all, of respondent's vessels upon which libellant was employed were diesel powered, and not "sail or steam" vessels as specified in 46 U.S.C.A. § 544. The parties agree that the weekly wages were regularly paid, subject to the ration deductions as above noted.

William A. Redfern, Jr., Norfolk, Va., for libellant.

Roy L. Sykes, Norfolk, Va., for respondents.

WALTER E. HOFFMAN, District Judge.

This action is instituted by a seaman and former member of the crew of certain tugboats and tender boats operated by the respondent, Norfolk Dredging Company, to recover unpaid wages and

Libellant relies upon the provisions of 46 U.S.C.A. § 596, § 665, § 604 and § 713.[1] Respondent, urging that its ves-

---

1. To the extent that they may be pertinent in this case, the statutes relied upon are summarized as follows:

    (a) Section 596 requires the master or owner of a vessel making "coasting voyages" to pay seamen their wages within two days after termination of agreement under which such seamen were shipped, or at time of discharge, whichever first happens; and in all cases the seaman is *entitled* to be paid at time of his discharge a sum equal to one-third of the balance of wages due (under a former Act the amount was one-fourth). The statute provides for penalties, frequent-ly referred to as "waiting time", as to any master or owner refusing or neglecting to make payment as prescribed *without sufficient cause*, and provides that the amount may be recoverable as wages. Excepted from the operation of § 596 are fishing vessels, whaling vessels, yachts, and any vessel wherein the seamen are entitled to share in the profits of the cruise or voyage.

    (b) Section 665 provides that if, *during a voyage*, the allowance of provisions as prescribed by § 713 is reduced, the seaman shall receive certain additional sums recoverable as wages by way of

sels were engaged in coastwise trade under 46 U.S.C.A. § 544, contends that it is not within the purview of the statutes advanced by libellant.

Section 544 deals specifically with vessels in coastwise trade and states:

"None of the provisions of sections 201–203, 542a, 543, 545, 546, 561, 562, 564–571, ·574, 577, 578, 591–596, 600, 621–628, 641–643, 644, 645, 651, 652, 662–669, 701–709, 711, 713 of this title shall apply to sail or steam vessels engaged in the coastwise trade, except the coastwise trade between the Atlantic and Pacific coasts, or in the lake-going trade touching at foreign ports or otherwise, or in the trade between the United States and the British North American possessions, or in any case where the seamen are by custom or agreement entitled to participate in the profits or result of a cruise, or voyage. June 9, 1874, c. 260, 18 Stat. 64; Mar. 3, 1911, c. 231, § 291, 36 Stat. 1167."

It will be readily observed that the foregoing statute (§ 544) has not been materially amended since 1911, and then only as to a minor point. In essence, the statute remains substantially as adopted in 1874. With this in mind it is of little consequence that respondent's vessels are diesel powered and not "sail or steam" vessels. Certainly Congress would not intend to now confine § 544 to "sail or steam" vessels and thereby destroy the effectiveness of this statute. We hold that diesel powered vessels engaged in coastwise trade are within the compass of the statute.

Through the maze of conflicting statutes we turn to the history of the legislation to find an answer to the problem.

The Act of June 7, 1872, c. 322, 17 Stat. 262, was a comprehensive piece of legislation to provide protection for seamen in respect to their wages and conditions of employment. Under § 12 of the Act, coastwise vessels were exempt from the requirement of signing articles before a Shipping Commissioner and from the penalties for such a violation imposed by § 35. The Grace Lothrop, 95 U.S. 527, 24 L.Ed. 514; United States v. Smith, 95 U.S. 536, 24 L.Ed. 517; Mahar v. Gartland S. S. Co., 2 Cir., 154 F.2d 621; Inter-Island Steam Navigation Co., Ltd. v. Byrne, 239 U.S. 459, 462, 36 S.Ct. 132, 60 L.Ed. 382.

compensation for such reduction or bad quality of food. There are exceptions to the operation of this statute which are not applicable to this case. The Statute specifically excludes fishing vessels, whaling vessels and yachts.

(c) Section 604 recites the summary proceeding afforded a seaman to collect his wages. It is not clear to the Court as to how libellant is relying upon this section. Presumably it is because of the specific provisions that it is inapplicable as to fishing vessels, whaling vessels, or yachts. The statute makes it mandatory upon the master to produce the *contract* of employment and log book, if required, and if not so produced, the seaman may state the contents thereof, with the burden of proving to the contrary being placed upon the master. The section makes reference to the vessel's "voyage".

(d) Section 713 contains the standard form of agreement (articles), wages and other pertinent data, scale of provisions to be allowed and served out to crew during the "voyage", substitutes, and further provides:

"The foregoing scale of provisions shall be inserted in every article of agreement, and *shall not be reduced by any contract*, except as above, and a copy of the same shall be posted in a conspicuous place in the galley and in the forecastle of each vessel.

"The three preceding paragraphs and the scale of provisions shall not apply to fishing or whaling vessels or yachts."

The section (§ 713) makes specific reference to Title 53 of the Revised Statutes and makes the same applicable to *all* vessels navigating on any sea or channel, lake or river, *to which the provisions of such title (Title 53) may be applicable*. Undoubtedly if Title 53 is applicable to the tugboats or tender boats operated by libellant herein, § 713 would likewise be applicable, unless otherwise exempt by 46 U.S.C.A. § 544.

Two years later Congress passed the Act of June 9, 1874, c. 260, 18 Stat. 64, which expressly provided that *none* of the provisions of the Act of 1872 were applicable to vessels in the coasting trade.[2] As was said in The Grace Lothrop and United States v. Smith, both supra, the Act of 1874 was an "explicit declaration that Congress never intended" the Act of 1872 to be applicable to vessels in the coasting trade. In the Byrne case, the court said that the Act of 1874 was intended to relieve "vessels making relatively short voyages * * from burdensome requirements not then deemed essential to the welfare of seamen employed thereon" [239 U.S. 459, 36 S.Ct. 134], more especially with reference to the wage provisions of the Act of 1872.

By the Act of June 19, 1886, c. 421, § 2, 24 Stat. 79, Congress provided that Shipping Commissioners *may* ship crews for vessels engaged in coastwise trade, at the request of the master or owner of such vessel. It is clear from the Act of 1886 that the provisions therein contained are merely permissive at the request of the master or owner, and not mandatory. The Sharon, D.C.E.D.Va., 52 F.2d 481.

The Act of August 19, 1890, c. 801, 26 Stat. 320, expanded the Act of 1886 by providing that whenever a crew was shipped for a vessel engaged in coastwise trade under § 2 of the Act of 1886, then such crew must be shipped under signed articles similar to those required in foreign voyages, and certain other sections of the Revised Statutes derived from the Act of 1872 were extended to the benefit of the seamen, but Revised Statute § 4529 (now 46 U.S.C.A. § 596) was not included.

Thereafter, by the Act of February 18, 1895, c. 97, 28 Stat. 667, Congress amended the Act of 1890, making certain other sections of the Revised Statutes derived from the Act of 1872, including the *first clause* of Rev.Stat. § 4529 (now 46 U.S.C.A. § 596) applicable to seamen in coastwise trade when shipped by a Shipping Commissioner. With minor amendments the Act of 1890, as amended by the Act of 1895, is now set forth in the second paragraph of 46 U.S.C.A. § 563.

Several years later the Act of Dec. 21, 1898, c. 28, 30 Stat. 755–764, substantially revised the law for the protection of the seaman. Of particular interest to the question here involved is § 4 of the Act of 1898, making reference to vessels engaged in "coasting voyages" by amending Rev.Stat. § 4529 as to the *first clause*, and thereby, presumably for the first time, making the penalty clause available to seamen in "coasting voyages" when shipped before a Shipping Commissioner. By § 26 of the Act of 1898, it is stated that § 4 is applicable to all vessels not specifically exempt, but not to fishing or whaling vessels, or yachts. What is now § 596 is substantially identical to § 35 of the Act of 1872, as amended by § 4 of the Act of 1898.

Manifestly, following the Act of 1874, Congress saw fit to provide certain optional protection for seamen in coastwise trade. The option to ship and discharge crews for vessels engaged in coastwise trade has been brought forward from the Act of 1886 into the first paragraph of what is now § 563 and the entire § 646. It is significant, however, that the Act of 1895 excluded the application of items 6, 7 and 8 of Rev.Stat. § 4511 (Shipping Articles) (now § 564) for coasting vessels when the crew was shipped before a Shipping Commissioner under the authority of the Act of 1886. Likewise the Act of 1895 provided that:

"* * * such seamen [on vessels engaged in coasting voyages whose crews were shipped before a Shipping Commissioner] shall be discharged and receive their wages as provided by the first clause of Section four thousand five hundred and twenty-nine * * *".

As heretofore indicated, § 4529 of the Revised Statutes is now a part of 46 U.S. C.A. § 596. As of 1895 the *first clause* of

2. The present § 544 is substantially the same as contained in the Act of 1874.

§ 4529 provided that masters or owners of vessels sailing from Atlantic to Pacific ports, or vice versa, must pay the seaman his wages within two days after the end of the agreement or at the time of his discharge, whichever event first happens. The *second clause* referred to payment of seamen's wages on foreign voyages. The *third clause* provided that in all cases a seaman would be entitled to a sum equal to one-fourth (later changed to one-third by the Act of 1898) of the balance of wages due. The *final* clause contained the penalty provisions.

It may well be argued that the Act of 1895, giving "such seamen" a recourse to the *first clause* of Rev.Stat. § 4529, furnished seamen in coasting voyages a right without a remedy to recover any penalty, as the penalty provisions are contained in the final clause of § 4529. The Act of 1895 provided that "such seamen" were to be paid off in accordance with a long list of statutes, but then placed the following limitation:

> " * * * in all other respects such shipment of seamen and such shipping agreement shall be regarded as if both shipment and agreement had been entered into between the master of a vessel and a seaman without going before a shipping commissioner."

An analysis of the foregoing statutes leads to the conclusion that, prior to the Act of 1898, a coastwise seaman had no right to invoke the penalty clause of R.S. § 4529. This is rather effectively established by Inter-Island Steam Navigation Co., Ltd. v. Byrne, supra, wherein the wages of a coastwise seaman were held *not* to be exempt from attachment. The court did not discuss the possible effect of the Act of 1898. However, Congress, by the Act of Mar. 4, 1915, c. 153, 38 Stat. 1164, 1169 (now 46 U.S.C.A. § 601), nullified the ruling in Byrne by providing that the wages of *all* seamen are exempt from attachment or arrestment. It will be noted that, subsequent to 1915, § 544 (or its predecessor) was altered to reflect the impact of the Act of 1915 since it no longer excludes coastwise sea-

men from the protection of § 601 (formerly R.S. § 4536). This is evidence of the continuing vitality of § 544 subsequent to 1898.

Libellant vigorously argues that the Act of 1898 has repealed the provisions of the Acts of 1872 and 1874 which denied the benefits to seamen in coastwise trade. It is said that Congress thereupon intended to grant the protective provisions to such seamen. Disagreeing with libellant, it cannot be said that Congress intended to repeal the *policy* of the Act of 1872, as modified by the Act of 1874, declared as such in The Grace Lothrop, supra. True, the Act of 1898 made the penalty provision applicable to seamen "of any vessel making coasting voyages" which Act contemplates that the crews had been shipped before a Shipping Commissioner. It is a fair construction that § 596 must be read in conjunction with § 563.

■ A proper interpretation of these statutes leads to the belief that, since 1898, coastwise seamen on vessels making coasting voyages who have shipped before a Shipping Commissioner, have the right, and the means of enforcing the right, to be paid off in accordance with the provisions of § 596. The Act of 1898 is merely an extension of the options available in coastwise trade, and does not impliedly repeal all prior legislation. Sections 544, 563 and 596 have remained as a part of the law throughout many sessions of Congress, and each most certainly has continuing vitality under a proper state of facts.

We are told that where Congress has expressly exempted fishing or whaling vessels, or yachts, it follows that all other vessels are necessarily subject to the provisions of these statutes specifying the exclusion. The force of this argument is aided when an examination is made of § 26 of the Act of 1898, 30 Stat. 764, which says:

> "That this Act * * * shall apply to all vessels not herein specifically exempted, but section * * * four * * * shall not apply to

fishing or whaling vessels or yachts."

Thus it is obvious that § 4 (now § 596) of the Act of 1898 is unavailable to seamen on fishing and whaling vessels and yachts and, without more, one would think that all other coastwise vessels are included within the terms of the present § 596.

In 1906, Congress passed legislation dealing with oyster vessels as follows (46 U.S.C.A. § 598):

"Sections 596, 599, and 604 of this title shall apply to all vessels engaged in the taking of oysters. June 28, 1906, c. 3583, § 4, 34 Stat. 551."

An oyster boat is unquestionably a vessel, and the men employed thereon are seamen. That such a vessel is engaged solely in coastwise trade by the very nature of its work cannot be disputed. In all probability the question arose as to whether an oyster boat was a "fishing vessel" and, to clarify its status, Congress saw fit to make certain provisions of the law, including § 596, applicable thereto. Libellant may argue that such action to clarify the status of an oyster boat effectively supports his argument that the Act of 1898 impliedly repealed the Act of 1874 excluding vessels engaged in coastwise trade. But the Act of 1874, and specifically what is now 46 U.S.C.A. § 544, was amended by Congress in 1911. If Congress had, by the passage of the Act of 1898, intended to repeal what is now § 544, there would be no need to amend § 544 in 1911.

The case of Pacific Mail Steamship Co. v. Schmidt was decided by the Supreme Court in 1915, and is reported as follows:

District Court—209 F. 264.

United States Court of Appeals, 9 Cir.—214 F. 513.

United States Supreme Court—241 U.S. 245, 36 S.Ct. 581, 60 L.Ed. 982.

In Schmidt, libellant was a steward who had signed off articles for the previous voyage, but was remaining aboard ship in the employ of Pacific preparing for the next voyage. He was discharged before signing new articles. He demanded "port pay" which was his wage while on articles, plus $1 per day allowance for food as no meals were served while the vessel was tied up. He also demanded penalties. The District Court allowed the claim. The Court of Appeals, in commenting upon the contention that the penalties under Rev.Stat. § 4529 (now § 596) applied only to "seamen shipped under an agreement," [214 F. 520] agreed with this statement but went on to hold that libellant was, in fact, still aboard under valid existing articles and was therefore within the provisions of the statute. The Supreme Court affirmed, but stated (241 U.S. 250, 36 S.Ct. 582):

" * * * libellant's legal standing was under an oral contract for a few days in port while hoping to be reshipped. It seems to us a very strong thing to say that any fair construction of the facts bring the case within the act."

The dictum in Schmidt suggests that what is now § 596 is not applicable to an oral agreement unless it is clear that the master or owner has violated other provisions of the law requiring written articles or, in the case of vessels making foreign voyages, etc., which are expressly covered under § 596. In Schmidt, the Supreme Court went further and said:

"The Statute [now § 596] deals with voyages."

The term "voyage" has no fixed meaning, but is dependent upon the particular situation. La Bourgogne, 210 U.S. 95, 135, 28 S.Ct. 664, 52 L.Ed. 973. The interpretation of the word "voyage" must be determined by reference to its context in the statute to be applied and by determining the Congressional intent in enacting the statute sought to be enforced. Buttimer v. Detroit Sulphite Trans. Co., D.C.E.D.Mich., 39 F.Supp. 222. As was said in The John Martin, 13 Fed.Cas. pp. 694, 697, No. 7,357:

"The term 'voyage,' however, as applied to vessels engaged in foreign and inter-state commerce, within the meaning of the maritime law, is

clearly inapplicable to a tug, making short trips, generally not from port to port, but from one body of water to another, merely furnishing the motive power to other vessels. * * It would be a misnomer to apply the term 'voyage' in the sense of the maritime law to such trips."

The Supreme Court of Appeals of Virginia has had occasion to deal with the subject of "coasting voyages" as related to § 596 in Standard Dredging Co. v. Barnalla, 158 Va. 367, 163 S.E. 367. The court held that the tug was a vessel making "coasting voyages", notwithstanding the fact that it was dredging in Hampton Roads when the cause of action arose, because of the *stipulation* of counsel that it was licensed for coasting trade and that its home port was New York. Because of this stipulation, and the fact that the vessel was a large sea-going tug, the seaman was held to be within the statute. The question of signed articles is not mentioned, and it cannot be determined whether articles were executed.

■■ The conclusion is reached that § 544 remains in effect; and that § 596 is applicable to "coasting voyages" as distinguished from "coastwise trade", suggesting that articles must be executed under § 563 as to any vessel engaged in "coastwise trade" before § 596 becomes applicable.

■■ As § 665 and § 713 are not applicable to vessels engaged in "coastwise trade" by the express provision of § 544, libellant's contention that these statutes furnish a basis for recovery must likewise fall. There are, however, additional reasons. It is apparent that § 665 is grounded upon § 713 in that it (§ 665) grants certain remedies for seamen if the rations fall below the standard prescribed in § 713, subject to exceptions not deemed pertinent. Manifestly, § 713 had its origin in § 65 of the Act of 1872, and was made unavailable to seamen in the coasting trade by the Act of 1874. Under the Act of 1895 it was provided that even where a master of a coastwise vessel had shipped his crew before a Shipping Commissioner, the articles need not contain the sixth item of § 564, which item is the scale of provisions specified in § 713. It will be noted that § 564 expressly relates to vessels bound foreign. By § 563, which is the optional shipping agreement statute for vessels in coastwise trade, articles are signed as provided by § 564 and § 565, "not however including the sixth and eighth items of section 564 of this title." Furthermore, by the terms of § 574, it is provided that articles must be signed for vessels in "coasting trade" when of the burden of 50 tons or upward. There is no contention in this case that any of respondent's vessels, upon which libellant served during his employment, were of the burden of 50 tons or upward. For this reason the employment of libellant was lawful without written articles. If no written articles are required, it follows that the provisions of § 713 could not have been fulfilled. Even though we were to assume arguendo that written articles were required under § 574, that section only requires the stating of the term of the voyage in the articles. In addition, if shipped under § 563, we are met with the additional problem that the sixth item of § 564 (containing the scale of provisions demanded by § 713) need not be inserted because of the terms of § 563. Thus, it is apparent that the coastwise seaman is not entitled to the statutory ration allowances under any theory.

To hold with the libellant in this case would result in practically every small launch, tender, scow, tug or barge, engaged in local activities, becoming subject to the same laws imposed upon ocean-going vessels. Such vessels may, under certain circumstances, fall within the scope of these laws, but it is difficult to conceive that Congress intended to take such action in the light of § 544. If such is the intention of our governing body, an act repealing the controversial section would tend to clarify the status of coastwise vessels. That the Acts in question are in need of clarification is not to be disputed, but it is not the function of any court to suggest such changes

or otherwise proceed beyond an interpretation of the existing laws.

While the motion to dismiss will be denied, proctor for libellant will advise the Court within a reasonable period of time as to his desire to proceed on the single issue of fact remaining for consideration and, if this issue is not meritorious, the parties may so stipulate, in which event an order will be entered dismissing the cause.