376 F.2d 725
 Earnest EATON, Appellant,
v.
SS EXPORT CHALLENGER, her boats, her engines, tackle, etc. in rem and American Export Isbrandtsen Lines, Inc., a foreign corporation or association, as owners, operators and agents of said vessel, in personam, Appellees.
 No. 10904.
 United States Court of Appeals Fourth Circuit.
 Argued March 9, 1967.
 Decided April 6, 1967.
 
 Arthur C. Ermlich, Norfolk, Va. (C. Arthur Rutter, Jr., and Amato, Babalas, Breit, Cohen, Rutter & Friedman, Norfolk, Va., on brief), for appellant.
 Virgil S. Gore, Jr., Norfolk, Va. (Seawell, McCoy, Winston & Dalton, Norfolk, Va., on brief), for appellees.
 Before SOBELOFF, BELL and WINTER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 In this appeal we are called upon to determine the application of 46 U.S.C.A. § 596, which provides a penalty for withholding wages, to a seaman working on port time. The district judge denied the seaman's claim for recovery of the penalty and allowed him only his wages for one day, less maintenance and cure. Judgment was, therefore, entered for $2.16. For reasons we shall presently state, we affirm.
 
 
 2
 Libelant, Earnest Eaton, was employed by respondent on board the SS "EXPORT CHALLENGER" from December 20, 1964 until February 24, 1965. On the latter date he was paid all of his earned wages and signed off from foreign articles at Hoboken, New Jersey. On February 25, Eaton was on port time[1] on board the SS "EXPORT CHALLENGER" without having signed new articles, either foreign or coastwise. It was understood that, at an undetermined future date, the ship would make a coastwise voyage and Eaton would be afforded the opportunity to sign coastwise articles.
 
 
 3
 On the morning of February 25, Eaton complained that he was ill. He obtained a master's certificate, went to the United States Public Health Service Outpatient Clinic in New York City, and returned later in the afternoon with a certificate declaring him not fit for duty. He then departed for Norfolk, Virginia.
 
 
 4
 Although there was a conflict in the evidence, we may assume for the purpose of this appeal, that before leaving the ship appellant demanded his wages from the purser for February 25 for the full day, in the amount of $10.16. It is not contested that the purser advised his relief purser to prepare a voucher for wages for that sum. However, through oversight or otherwise, Eaton was not immediately paid. While the testimony of additional demands made by Eaton, or his legal representatives, was also conflicting, Eaton was not tendered his wages for that day until April 30, 1965, at which time the tender was refused. Eaton instituted a libel, alleging his entitlement to $20.32 wages for each day from February 25, 1965 until paid. An unconditional tender of the full amount of their liability to Eaton was not made by respondents until July 12, 1965, and by that time respondents' liability, if § 596 were applicable, would have exceeded $3,000.00 less any set-off for maintenance and cure afforded Eaton in the interim.
 
 
 5
 Eaton's claim of right to recover a sum equal to two days' pay for each and every day during which payment was delayed is grounded on 46 U.S.C.A. § 596.[2] As an examination of the text of this statute will disclose, it is operative with regard to the failure of the master or owner of any vessel making coasting voyages to pay every seaman his wages "* * * within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens * *." It is undisputed that Eaton had no agreement under which he was shipped on February 25, 1965 — the day on which he worked, was taken ill, and left the ship — and no claim is made in this appeal that any agreement should have been entered into for that date. It is clear also that Eaton's leaving the ship because of his illness on the afternoon of February 25 was not a discharge within the meaning of § 596. Section 596 establishes alternative occurrences for prompt payment of wages. The first is termination of an agreement under which a seaman shipped. The other is "time of discharge," but after stating "at the time such seaman is discharged," § 596 immediately adds "whichever first happens," thus referring back to the other alternative. The type of discharge in contemplation of § 596 is, accordingly, discharge during the pendency of an agreement under which a seaman was shipped but before that agreement terminated by its terms.
 
 
 6
 From what we have said, we conclude that the natural and ordinary meaning of § 596 is that it has no application to work performed on port time, that is, when a vessel is tied up in the interim between the completion of one voyage and the commencement of another and when articles are neither in fact signed nor required. This conclusion finds support in a strong dictum in Pacific Mail S. S. Co. v. Schmidt, 241 U.S. 245, 36 S.Ct. 581, 60 L.Ed. 982 (1916) (Holmes, J.).[3] See also, Gardner v. The L. N. Danzler, 177 F.Supp. 736, 742 (E.D.Va.1959). That § 596 is so limited is in accord with the apparent rationale of § 596 that seaman not be stranded in foreign ports or domestic ports remote from where they were employed without payment of a significant portion of the amounts due them, so as to obviate their being without funds or under economic compulsion to sign new articles on terms and conditions dictated by the master or owner.[4]
 
 Affirmed.[5]
 
 
 Notes:
 
 
 [1]
 Port time is day to day employment aboard ship in port at a time when the ship is between voyages
 
 
 [2]
 "§ 596. Time for payment
 "The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens; and in case of vessels making foreign voyages, or from a port on the Atlantic to a port on the Pacific, or vice versa, within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged, whichever first happens; and in all cases the seaman shall be entitled to be paid at the time of his discharge on account of wages a sum equal to one-third part of the balance due him. Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court; but this section shall not apply to masters or owners of any vessel the seamen of which are entitled to share in the profits of the cruise or voyage. This section shall not apply to fishing or whaling vessels or yachts." (emphasis supplied)
 
 
 [3]
 In thePacific Mail case, the seaman had completed foreign articles in San Francisco and was paid in full. He, nevertheless, remained on board working, intending to sign new articles for the next voyage. He was discharged from his port time employment and refused his pay, because he was claimed to be accountable for silverware which was missing. He sued for his pay and the penalty for refusal of his pay provided for by the predecessor statute of present § 596, alleging that his employment began after the expiration of his foreign articles. In dealing with the statute, the Court said:
 "* * * it is far less clear that the district court was justified in treating the case as within the penalties of the act. The statute deals with voyages. The voyage for which the libellant shipped was at an end * * *. On the return to San Francisco within the time the libellant was paid all that was due to him * * *. No new articles had been signed, and it would seem * * * that the libellant's legal standing was under an oral contract for a few days in port while hoping to be reshipped. It seems to us a very strong thing to say that any fair construction of the facts brings the case within the act. (emphasis supplied) Id., p. 250, 36 S.Ct. p. 582.
 Because the Court deemed that the lower courts had held to the contrary and the scope of the writ of certiorari did not extend to reopen the question, the Court assumed the correctness of the decision below on this point, but reversed the decision of the Circuit Court of Appeals on another ground.
 An examination of the two opinions below indicates that the assumption made by the Court was a violent one. The district court's opinion did not expressly consider the applicability of the statute. Schmidt v. Pacific Mail S. S. Co., 209 F. 264 (N. D.Cal.1913). The Circuit Court of Appeals thought that the services for which the libel was brought were rendered under the articles. Pacific Mail S. S. Co. v. Schmidt, 214 F. 513, 520 (9 Cir. 1914). It was, of course, a complete answer that certiorari had not been granted to review the question.
 
 
 [4]
 Another argument advanced is that § 596, by the terms of 46 U.S.C.A. § 544, is not applicable to vessels engaged in the coastwise trade and that the "EXPORT CHALLENGER" was so engaged. While 46 U.S.C.A. § 544 (1958 Ed.) states,inter alia that § 596 is inapplicable to vessels engaged in the coastwise trade, later editions drop § 596 as among the excluded sections. After oral argument, we were furnished a letter from the publishers of U.S.C.A. to the effect that in the 1958 edition of U.S.C.A. § 544 erroneously included § 596 among the enumerated exceptions. Because we conclude that, by its terms, § 596 has no application to Eaton's case, we need not examine this argument or the publisher's conclusions.
 
 
 [5]
 Judge Bell, who was one of the panel to which this case was submitted, died before the opinion was prepared and submitted to him. After argument, he expressed himself in accord with the conclusion reached herein